51 So.2d 664 (1951)
HARDWARE MUT. CAS. CO. et al.
v.
ABADIE et al.
No. 19541.
Court of Appeal of Louisiana, Orleans.
April 9, 1951.
Hammett & Bertel, Numa V. Bertel, Jr., New Orleans, for plaintiffs-appellants.
Porteous & Johnson, Charles Seeman, New Orleans, for defendants-appellees.
JANVIER, Judge.
On April 19, 1948, at about twelve o'clock noon, at the corner of Dryades and Dufossat Streets in New Orleans, there was an intersectional collision between two automobiles, one owned and driven by the Rev. B. C. Taylor, and the other owned and operated by Edward J. Abadie. The car of Mr. Taylor sustained injury and the cost of making the necessary repairs was $136.87.
Mr. Taylor had secured a policy of collision insurance from Hardware Mutual Casualty Company under which that company agreed that in event of damage to the car by collision, it would pay eighty per cent of the cost of making the repairs and Mr. Taylor himself would assume the remaining twenty per cent.
Allstate Insurance Company was the liability insurance carrier of Abadie, and Hardware Mutual Casualty Company having paid $109.50 as its eighty per cent share of the cost of repairing Mr. Taylor's car and having been subrogated pro tanto to the rights of Mr. Taylor and he having paid the additional twenty per cent, or $27.37, the said company and Mr. Taylor joined as parties plaintiff in bringing this suit against Abadie and Allstate Insurance Company.
Hardware Mutual Casualty Company prayed for solidary judgment for $109.50 and Mr. Taylor prayed for solidary judgment for $27.37.
Plaintiff alleged that Mr. Taylor, who was driving his car down Dryades Street towards Canal Street at a slow rate of speed, reached the corner of Dufossat Street and "had gone about half way across the intersection" when the defendant, Abadie, "came into the intersection * * * without stopping and without allowing petitioner to complete the crossing. * * *"
It is charged by plaintiffs that Abadie was negligent in that he failed to respect Mr. Taylor's right of way and to allow him to complete the crossing; in that he failed *665 to keep a proper lookout and to stop to avoid the collision; and in that he drove at an excessive rate of speed, did not have proper control over his car and did not apply his brakes.
The defendants admitted the occurrence of the accident, but denied any negligence on the part of Abadie, and averred that as Abadie approached the intersection, he reduced the speed of his car and "observing that there were no vehicles approaching on Dryades Street in close proximity to said intersection to prevent his crossing said intersection, * * * drove into said intersection, and while in the act of traversing same, the vehicle he was driving was struck by an automobile driven by plaintiff, Rev. B. C. Taylor."
Defendants charged that Mr. Taylor was himself negligent in that he entered the intersection at a speed in excess of twenty miles an hour in violation of the City Traffic Ordinance, No. 13,702 C.C.S., in that he failed to keep a proper lookout and failed to accord to Abadie the right of way; in that he failed to have his automobile under proper control and failed to act as a reasonable and prudent person should have acted.
The defendants especially and in the alternative pleaded the contributory negligence of Mr. Taylor.
All parties pleaded the City Traffic Ordinance No. 13,702, C.C.S., though it was not offered in evidence when the case was tried and is, therefore, not before us. Myers v. Landry, La.App., 50 So.2d 318; DiLeo v. DuMontier, La.App., 195 So. 74.
There was judgment dismissing the suit and both plaintiffs have appealed.
It is conceded that at this intersection each of the streets is limited to traffic going in one direction, traffic on Dryades Street being permitted to go only in a downtown direction towards Canal Street and traffic on Dufessat Street being permitted to go only in the direction from the River to the Lake. On Dufossat Street near the corner of Dryades Street facing Abadie, as he approached the corner, was a yellow sign which required that he reduce his speed. There was no such sign on Dryades Street, and plaintiffs contend that since Mr. Taylor knew that there was a sign on Dufossat Street, though he did not know what wording was on the sign, he was justified in assuming that he was entitled to the right of way. He said: "* * * I thought that I had the right of way, that is, according to may way of thinking, in fact, according to the traffic rules I did have the right of way so I proceeded at the same rate of speed I was going since I did have the right of way. * * *"
He also said that he did not know his own "exact speed" but that he "wasn't driving excessive." Later he fixed his speed at "twenty-five (25) miles an hour, something like that."
Abadie, on the other hand, says that as he approached the corner he saw the Taylor car "about in the middle of the block" and that he proceeded across. A little later he said that when he saw the Taylor car it was about 30 or 40 feet away. He was asked: "Was this other car far enough away from you to allow you time to cross with reasonable safety?" and he answered: "Yes, sir, I think so." He said that he himself had slowed down, "a little bit better than the middle of the block."
It seems that Mr. Taylor swerved his car slightly to its left just before the collision and it also seems clear that the right front of his car came into contact with the left front of the Abadie car.
From the record before us it cannot be said that either car had preempted the intersection.
As we said in Sheehan v. Hanson-Flotte Company, La.App., 34 So.2d 657, to preempt an intersection does not necessarily mean to enter it first. Preemption does not take place unless the vehicle which enters first does so at a normal speed and after its driver has exercised proper precautions and after it has become evident that it can cross in safety if no other vehicle arrives at an unexpectedly excessive speed.
Even if the matter were before us on the record without the benefit of the decision of the trial court, we would find it difficult to reach a conclusion as to whose *666 fault caused the accident. In fact, we feel that the evidence shows rather conclusively that either driver could have avoided the accident had he exercised a little more caution. At any rate, we certainly see nothing in this record which justifies the conclusion that the finding of the trial court was manifestly erroneous.
Accordingly, the judgment appealed from is affirmed at the cost of appellants.
Affirmed.